FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 28, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANGEL RAMON BARAJAS-ZARATE,<br><br>Defendant. | No. 4:22-CR-06052-SAB-1<br><br>ORDER GRANTING THE UNITED STATES' MOTION TO EXPEDITE AND GRANTING THE UNITED STATES' MOTION TO RECONSIDER PRETRIAL RELEASE<br><br>ORDER EXONERATING BOND AND DIRECTING DISTRIBUTION<br><br>**ECF Nos. 25, 26, 28** |

On Tuesday, December 27, 2022, the Court conducted a hearing on Defendant's Motion to Reconsider Pretrial Release (ECF Nos. 25, 28) and related Motion to Expedite (ECF No. 26). Defendant was represented by Assistant Federal Defender Jennifer Barnes. Assistant United States Attorney Stephanie Van Marter represented the United States.

On December 16, 2022, the Court held a detention hearing and denied the United States' Motion for Detention (ECF No. 8). ECF No. 27. However, the United States filed motions for this Court to reconsider that decision, contending that the matter should be revisited pursuant to 18 U.S.C. § 3142(f)(2). ECF Nos. 25, 28.

ORDER - 1

1  The Court has considered the Indictment (ECF No. 1), Defendant's Motion
2  to Reconsider Pretrial Release (ECF Nos. 25, 28), the Pretrial Services Report
3  (ECF No. 12), the Supplemental Pretrial Services Report (ECF No. 16), and the
4  arguments and proffers of counsel.
5  The United States contended that if released, Defendant would present both
6  a risk of nonappearance and a danger to the safety of the community.  Defendant,
7  through counsel, contended there are conditions the Court could impose that would
8  reasonably assure Defendant's appearance as required and the safety of the
9  community if released.
10 Pursuant to 18 U.S.C. § 3142, this Court has taken into account the nature
11 and circumstances of the offense charged, the weight of the evidence against the
12 Defendant, as well as Defendant's history and characteristics, including character,
13 physical and mental condition, family ties, employment, financial resources, length
14 of residence in the community, community ties, past conduct and history relating
15 to alcohol and drug abuse, and also criminal history, record concerning appearance
16 at court proceedings, whether Defendant was under supervision at the time of the
17 alleged offense, and the nature and seriousness of the danger to the community
18 posed by Defendant's release.  The Court has also weighed the rebuttable
19 presumption of detention as an additional factor, in accordance with Ninth Circuit
20 caselaw.  *See* ECF No. 27; *see also United States v. Hir*, 517 F.3d 1081, 1086 (9th

ORDER - 2

Cir. 2008).

As a preliminary matter, the Court notes that the Government has made a prima facie showing to reopen detention under § 3142(f)(2). A detention hearing may be reopened if "information exists that was not known to the movant at the time of the hearing and has a material bearing on whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2).

The execution of the most recent search warrant and the seizure of additional controlled substances linking Defendant to the previously discussed stash house, *see* ECF No. 27, constitute information that may not have been known to the Government at the time of the previous hearing. Moreover, they constitute information that has a material bearing on Defendant's risk of danger to the community.[1]

At the previous hearing, the Court's primary focus was the presence of the firearms and controlled substances found in Defendant's residence, as evidenced

---

[1] Counsel for Defendant argued the Court should not consider this evidence due to the Government's "delay" in executing the most recent search warrant. However, absent an allegation of gamesmanship by the Government—which was not alleged here—the Court assumes that the search warrant executed within a reasonable time period, here days not weeks, is appropriately considered by the Court.

ORDER - 3

by the line of questioning that took place.[2]  Although the Court was profoundly concerned regarding the amount of controlled substances seized from the stash house, there was a lack of a substantial connection between the stash house and Defendant because.  It was proffered only that an individual claimed to rent the stash house to Defendant.  The Court was wary of this statement for the following reason.  A statement against penal interest by another defendant, that had the effect of greatly minimizing the culpability of the speaker, is substantially self-serving.  The Court believed it was, standing alone, insufficient to tie Defendant to the stash house.

      Thus, the Court's previous calculus was limited to the evidence that was sufficiently linked to Defendant because it was located at his residence.  This included the aforementioned three firearms, a backpack, and a vehicle—the latter two of which each alerted K-9 units for controlled substances, but had yet to be searched as of the prior hearing.  This new information changes the calculus.  The controlled substances recently seized from Defendant's vehicle were packaged identically to those seized from the stash house.  The packaging for the suspected

---

[2] It was proffered at that time that only three firearms were seized from Defendant's residence while fourteen from the stash house.  The audio record confirmed that the Court only discussed and considered the three firearms seized from Defendant's residence.

ORDER - 4

fentanyl was tied off in the same fashion in both the vehicle and the stash house, and used some of the same zip-lock style bags. The similarity of "packaging" found in the vehicle includes the same brand of tote[3] seen at the stash house. Given this, Defendant is now firmly connected to the stash house which contains a truly staggering amount of controlled substances, including: 100,000 fentanyl pills, 1 kilogram of cocaine, and 45 pounds of methamphetamine.[4]

In addition, Defendant is now linked to additional firearms beyond the three previously considered by the Court, which included a break action shotgun and two handguns. Defendant had in his vehicle a loaded magazine containing .223 ammunition, a type commonly fired by AR-15 style rifles. There was some dispute between the parties as to how the Court should view this magazine with respect to its connection to Defendant. The Court simply notes that the presence of

---

[3] The totes are important. They are very large distinctively shaped black storage tubs and contain similarly packaged controlled substances. The Government's characterization of the interior of Defendant's vehicle as a mobile drug processing and packaging facility was not hyperbole.

[4] The Court believes a conservative retail value of these controlled substances easily exceeds a half a million dollars, and they could be substantially more valuable. This is a truly astounding amount of "product" to have on hand and bespeaks a high-level of average daily distribution.

ORDER - 5

a loaded rifle magazine in Defendant's vehicle indicates an elevated risk of danger posed by Defendant.  Rifle rounds are capable of causing much more damage at a longer range than pistol rounds.  It is also frankly nonsensical that an individual would purchase or possess a single rifle magazine and either load or have the magazine loaded for a firearm that he or she does not already possess and/or have a plan to use.  Thus, the Court is now presented with a heightened concern for community safety both with regard to the danger posed by controlled substances as well as firearms.  While the presence of both controlled substances and firearms is neither unusual nor alone determinative of whether detention is appropriate, this case presents more than the mine-run case. Defendant is now firmly tied to the enormous volume and value of controlled substances and at least one of the weapons[5] at the stash house, in addition to those items found in his home and his vehicle.  Originally this was a close case, now it is not.  The presence of weapons in Defendant's residence, in close proximity to controlled substances and items used for their distribution was concerning.  Now that he is obviously connected to the weapons and contraband at the stash house, and is known to be the initial recipient of these drugs through the mail, he is clearly a much greater danger to the

---

[5] Defense counsel conceded that a weapon capable of receiving the AR-15 style magazine was located at the stash house.

ORDER - 6

community and a greater risk of flight, given the difference this is likely to make in a potential sentencing calculation.

Therefore, in weighing the § 3142(g) factors—and the rebuttable presumption as a fourth factor—the Court finds that the United States has established by the required preponderance of evidence an absence of conditions or combination of conditions of release that would reasonably assure Defendant's appearance as required. *See* ECF No. 27. However, the United States has established by clear and convincing evidence that Defendant poses a present risk to the safety of other persons or the community that cannot be mitigated by conditions or a combination of conditions of release.

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion to Expedite (**ECF No. 26**) is **GRANTED.**

2. Defendant's Motion to Reconsider Pretrial Release (**ECF Nos. 25, 28**) is **GRANTED**. Defendant shall be held in detention pending disposition of this case or until further order of the Court.

3. Defendant is committed to the custody of the United States Marshals Service for confinement separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

4. Defendant shall be afforded reasonable opportunity for private consultation with counsel.

ORDER - 7

5. If a party desires this Court to reconsider conditions of release because of material and newly discovered circumstances pursuant to 18 U.S.C. § 3142(f), that party shall file a maximum four-page motion for reconsideration succinctly stating what circumstances are new, how they are established, and the requested change in conditions of release.  The motion shall indicate whether opposing counsel; United States Probation/Pretrial Services; or another party with a substantial interest in the motion object, whether a hearing is desired, and whether a supplemental pretrial services report is requested.  If the moving party, after the exercise of due diligence, is unable to determine the position of opposing counsel; United States Probation/Pretrial Services; or another party with a substantial interest in the motion, the moving party may in the alternative document the date; time; and manner of each effort made to determine that party's position.  This Court will treat the motion as expedited and submitted without argument, and will set a hearing or issue other orders as may be appropriate.

6. If a party desires that another court review this order pursuant to 18 U.S.C. § 3145, that party shall promptly file a motion for review before the district judge to whom the case is assigned, as further described in the Detention Order Review Protocol published for the Eastern District of Washington.  Both parties shall cooperate to ensure that the motion is promptly determined.

7. Defendant is bound over to Chief Judge Stanley A. Bastian for further

ORDER - 8

proceedings.

8. **The percentage bond previously posted in this matter (*see* ECF No. 22) is exonerated and shall be returned to the individual who posted it.**

**IT IS SO ORDERED.**

DATED December 28, 2022.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

ORDER - 9